Good morning, counsel. Good morning. May it please the court, James Armstrong for the appellants. FMM Enterprises, GTPD Enterprises, Neal Billock, Ryan McElweeny, and Cynthia Walsh. Appellants don't dispute that the district court has the authority under Rule 23D to get involved, change the message, fix problems, set limits. But the appellees don't dispute the First Amendment stands proud and large and protects us. The issue is how, in the fog of war, are those rights balanced? I hate to take you down from the heights of the First Amendment to the depths of USC 1292, 1291A. My first problem in this case is our appellate jurisdiction. Could you address that? I believe Judge Malloy's colleagues, a former colleague in one instance, but a still existing colleague, Judge Arnold, got it right in Great Rivers. They were succinct. They got to the point. We have appellate jurisdiction because the order is in the nature of an injunction. Is it? Is it? Of course, if it is in the nature of an injunction, we have appellate jurisdiction. Why is it in the nature of an injunction? Two reasons. Certainly the curative part is not in the nature of an injunction. It's just the court doing what Rule 23D says it should do. Is it the communications ban that's in the nature of an injunction? It's both, to respectfully disagree, Your Honor. The first one, clearly, a ban on communication is a prohibitory injunction. Is it a preliminary injunction or a temporary injunction? In other words, could the judge say, don't communicate. The judge says, put aside the curative order for a second. I order both of you not to communicate with any class members until I have a hearing. Is that an appealable order under 1291? He did that, by the way, Your Honor. I know. I know. That's why I'm asking. Is that an appealable order under 1291? No, and we didn't appeal that. Okay. Why this one was don't communicate until the curative order goes out. So why is that a preliminary injunction in effect under 1291? For the very reason that it prohibits contact. It prohibits it. My question is, it has to be a preliminary injunction. It has to be an injunction pendente lite until I get to the trial. Temporary restraining orders aren't appealable orders. Isn't that in the nature of a temporary restraining order? No, Your Honor. No, it's because here we are today, months later, and there's been no communication certainly on our part. Well, you're here months later because you all agreed that the case got stayed. Had it proceeded without a stay, there would be no communications ban in order, would there? There would be. The judge, what happens is the judge says, don't communicate until you get out this curative instruction, this curative notice. And the parties, or you or somebody, says, hold on everything here, judge. Let us go up and appeal this. Let us take two years to appeal it, and then we'll come back to you. Had you not done that, this law would have gone away, wouldn't it? Two reasons. One, we saw expedited relief with Scorsese Court, so we appreciate that. Two, it doesn't go away. I'm still going back to the judge's order. He didn't say, don't communicate until the trial on the merits. He said, don't communicate until something else happens, which I anticipate will happen quite shortly. And so I'm trying to figure out how that arises to, it surely tells you not to do something. I agree, it enjoins you from doing something. But is it the kind of injunction we can review under 1291? You can because Rule 65 temporary restraining orders are good for 10 days or less. We are way beyond 10 days. There is no guarantee in the judge's order that we've appealed that it would be 10 days or less. In fact, it was clear in the order it would be longer than that because it gave a timeline for us. It is a preliminary injunction. And to answer your prior question, it's also a mandatory injunction because it requires communication. So in your view, every Rule 23d order which requires communication is immediately appealable? I know this one is, Judge, and I think you've gone too far with your hypothetical. Well, you said it's a mandatory injunction because it requires communication. And isn't every Rule 23d order something that requires communication? One, the answer is yes, it does, but there are those that require permissible communication. Now you're getting to the merits. See, that's why I'm trying to focus on jurisdiction. Doesn't every Rule 23d order mandate that someone communicate? Not every one, Judge. Really? The scope of the remedy is broad. A district court can say stop doing this. No, I understand. I'm talking about a Rule 23d curative order. A district judge who says parties are ordered to make this disclosure. And that's a mandatory injunction in your view. It is, Judge. Therefore, is it immediately appealable? I hate to – I think in certain circumstances it does. When it's prejudicial, it does. Prejudicial is not the measure we take for appeal. That's what we decide once it gets here. I think your position has to be yes, it is. Every 23d order is immediately appealable. Is that your position? If it's a curative notice, to clarify your hypothetical, I believe – I've got to stick with it, Judge. I think where there's a problem with that curative notice, the answer is yes. If there's no problem, no harm, no foul, and I don't want to impose upon the Ninth Circuit or any other circuit more work and more appeals because I answered yes to your question, so I just can't say that it's correct. So let me ask the question differently then, and then I'll try to sit back for a moment. But what harm do you suffer that couldn't be remedied at the end of the case? In other words, let's assume you don't get class certification. Remember, I'm the defendant. I understand. I understand. But let's assume there's no class certification. Then you've won, and we don't have to deal with it. So far, so good. Okay. You've got my ear. Okay. So let's assume there is class certification, and there's a judgment entered against your client. Can't we just reverse it? I don't believe so, Judge. Why not? Not in these circumstances. You just said the First Amendment was violated. We can't reverse judgments when the First Amendment is violated? One, we're a small potential class, 120 to 125 people. We send a notice to all of those, I can't unring that bell. Well, you can't unring the bell in the trial court, but we've got lots of unringings. Unringings happen up here all the time. They've heard the prejudicial communication, Judge, and now we're going to have the same 125 people get a new message and a new notice from the district court? You didn't want them to get the curative notice. I mean, I'm just normally, you know, perhaps it's only a memdisc, but we've had almost the identical kind of case in the last several months, and the court found there wasn't appellate jurisdiction because it could be handled. Now, that's not presidential, and it doesn't bind us, but that's why I asked the question. Why can't it just be handled at the end of the case? It can't, because in this circumstance, one, no contact is no contact. I literally can't do my case, and the district court, Judge, I believe, recognized the overbreadth by vacating an oral argument because we were precluded from defending ourselves. And then after that, the district court stayed the entire case for the same reason. Our hands are tied. We lose all our senses. We cannot communicate. Even the appellees cannot communicate because if they want to challenge, which is the remedy below, if they want to challenge the declarations they're concerned about, if they want to attack the settlement agreements that are being presented and that our courts have upheld, they can't talk to the punitive plaintiffs either. It's a complete shutdown, this order. There is no blanket prohibition because it shuts a case down on both sides. That can't be cured. We just go along in the dark until what happens. And that's why jurisdiction does exist. We should get on board with the Eighth Circuit. We think they've thought about it. They've addressed it. And when you force communication but when you preclude it entirely, it ought to be addressed immediately under 1291A1. No, you're not permanently precluded from communication, though. It's only until you send the notice, right? And that's what makes it such a Hobson's choice. Well, but going back to Judge Hurwitz's question, what you're asking is, and maybe this should be the rule, is that essentially any time a judge issues a 23D order that says, in essence, we think you made a miscommunication to the class, you have to send a curative notice before you can do anything else, that's going to be immediately appealable. Now, maybe that's not the bad result, but that's what you're saying, in essence. It's a lot more work for this court. Maybe it has an ameliorative effect on the district courts, but I have a hard time saying everything. They also have a duty to make sure you're not sending miscommunications or making miscommunications. And 30 seconds on the record, so I can reserve four minutes, is I love to talk about the facts all day long because there's nothing in the facts. So I'm interested in the jurisdictional question, but there's no record below. It ought to be vacated and we ought to get a record, and then I think you're in a position to make a better decision. But jurisdictionally, this is where we belong. I'm sorry, Judge, I don't believe it's every time because that's too much work, and I think there's some good curative notices that go out. All right, thank you, counsel. Thank you, Your Honor. Good morning. If it will please the court, Trenton Kishima on behalf of the appellees, Tyrell Glass, Jordan Torado, and Dustin Schnatz. Defendants here attempt to shoehorn basically what is a dispute about the proper curative notice into an injunction for the purposes of getting jurisdiction before this court. As the court pointed out, the so-called injunctive order in this particular case was temporary and was only meant to be a pause while the parties figured out and jointly figured out curative notice. Actually, if I could point the court to the February 12, 2018, order by the court, it only temporarily prevented the parties from communicating with the putative class for 10 days while there was a meet-and-refer requirement. After that, it lapsed. I wanted to ask a question about that because I couldn't tell from this record. I know the proceedings in the trial court have been stayed, correct? Yes. By the trial judge? Yes, Your Honor. So I take it that means, does that also mean that the communications ban has been stayed? In other words, one could state proceedings. One could say, I'm not going to continue with the proceedings in this case until I hear from the Court of Appeals. What does that do with respect to each side's ability to communicate with the class if the curative order is given out? Has that been stayed? Well, from plaintiff's point of view, we cannot communicate with the class because the February 27th order specifically stated that we cannot communicate with the punitive class until the curative notice is issued. Right. Now, if that's my question, the judge issued the notice, approved the notice. Exactly. And in the absence of an appeal, what would have happened was presumably you all would have used the notice and communicated. The proceedings below have been stayed, but is there anything in this record that tells me whether or not while they're stayed people can't give out the notice and communicate? You know, there's nothing specific from the court. However, both parties have assumed that that is the case. You both do appear to have so assumed. I was just trying to figure out whether somebody had instructed you in that way. No, not at all, Your Honor. The reason why the parties have done that is out of abundance of caution and in order to maintain the status quo because that's the whole purpose of the state pending appeal. Obviously, if we were to run out, they were to solicit more declarations and settlement agreements, and we were to go out and solicit counter evidence. That, of course, would affect the ongoing proceedings below the court and rob this tribunal of the ability to rule on this issue. And you represented to the motions panel in your papers that don't worry, we're not doing anything right now, they don't need to stay. Exactly. But it doesn't change the fact that this is a temporary order. It was only meant to be in effect the handful of days it took the parties to organize the logistics in order to issue the actual curative notice. Well, let's get back to the question I asked Mr. Armstrong. Let's assume the order's entirely wrong, just for purposes of discussion. What's his remedy by way of appeal? I mean, does he have a remedy by way of appeal at the end of the case that gives him any? I mean, after all, at that point, the class has been contaminated under his view, and they've been told bad things, et cetera, et cetera. How can he get a remedy by way of appeal? Well, there's a couple ways to unravel that even before the case comes to appeal. Obviously, in this case, actually, we have multiple classes. We have a class under the FSLA under Rule 216, and then we also have a Rule 23B3 class. And so there's probably going to be notice actually issued in conjunction with this. As a matter of fact, defendants actually admit that in their brief and say that that would be the proper point for corrective notice, and that might be the proper point to correct any deficiency that might happen. At the point of class certification, which would be an appealable order? Would be an appealable order, however— As a discretionary matter. As a discretionary matter under Rule 23F, of course. However, the other thing, too, is— Well, take me to the end of the case. And for purposes of the end of the case, Mr. Armstrong's side loses, and he's very unhappy about this notice. How can we fix it? Well, there's two main issues I think that were brought up in the notice. First is this FSLA waiver, which is whether the FSLA waiver and the settlement agreements listed by defendant in this particular case are enforceable. This is something that could be decided on appeal. And should it be decided on appeal, the parties get their answer, an answer that's binding on everybody. Additionally, the other issue that was the primary driver of the corrective notice was these boilerplate declarations that were being solicited. Obviously, if these were admitted for evidence at any point, that evidence could be appealed, whether or not they should be admitted to evidence and what weight they should be given. So at the end of the day, there are remedies available to the appellants should this case actually come up to final appeal. And there really isn't any prejudice here because within the corrective notice, there's nothing in there that is inherently prejudicial. Matter of fact, all the points that Judge Houston made in his corrective notice are points that are valid points of law. That there would be a fairness hearing if there was any settlement. That the FSLA does not allow parties to settle their case without the involvement of the Department of Labor or the district court itself. That, of course, parties have the right to counsel. Parties have the right to see documents before they sign them. All these things are simply statements of law that are well accepted and not prejudicial to the client, to the appellants. And I think that actually dovetails into the merits of this particular case. One of the things that opposing counsel mentioned is that there is just no record here. Now, it looks like we're all in agreement what the standard of review is here. Of course, in the Gulf Oil versus Bernard case, the Supreme Court has stated when there is some sort of prohibition on communications with punitive class members, it needs to be based on clear record. There needs to be finding of facts. There needs to be a balancing of the interests of the parties. And then, of course, the order needs to be narrowly tailored. Here, there is a clear record. As a matter of fact, if you look at the excerpts of the record and the supplements of the excerpts of the record, you'll find that appellants submitted two declarations in the defense, one from the counsel, one from the gentleman that was actually having ex parte communications with the class members defending himself. And you had the documents. We also had the documents. Because you had the documents. Well, the only way we're actually able to get the documents in this case. I was trying not to get into that, but you had them. We have the documents because they actually contacted a representative member of the class. And so through that contact, we were actually able to get the documents. But this actually brings up the court's finding of facts. The court's actually made specific finding of facts on the record. And we can see this in the transcript for the January 31st hearing. As a matter of fact, specifically the transcript at pages 42 to 48 of the record. Indeed, the court first looked at the situation and noted that these in-person type of solicitations are exactly the type of solicitations that had been admonished by the Supreme Court in previous cases. As a matter of fact, there was even an 11th Circuit case on this particular matter that stated when having in-person communications with the class, it allows the defendants to exert pressure on them and force them to basically take an offer without any counter-information or ability to basically discover additional facts. Also, it prevents the court from exercising its prerogative to protect the class because most of these communications would be in a media that's just not revealable. And that's exactly what we have here. In the facts of this case, it's undisputed what Mr. Griffin did when contacting the pundit class members. He first started off with text messages and emails, and these were extensive. As a matter of fact, for Mr. Burnham, he contacted him four times in 12 days between August and September of last year. And when he didn't answer those ones, he contacted him yet again in December of last year to try to get the settlement. And at that point, he actually was represented. So this is another violation of the rule of ethics. But after he secures this in-person meeting, we have information from Ms. Cromwell who stated that he wouldn't release the documents to her so she can review them with her attorney. So defendants are also robbing the pundit class members of the ability to actually seek counsel in this case. So there was a definite record that these in-person communications were at least prejudicial to the class. And that finding of fact is entitled to deference under the clear error standard. Now, as we also mentioned, the court found that the FSLA release contained in the settlement agreement was troublesome, if not downright unlawful. And this is also supported by the case law, and it hasn't been disputed by the appellants. Here, the parties cannot release claims without the supervision of the court. And this isn't a rubber stamp. There's actually several cases that have stated that these FSLA releases will be denied if they involve claims that are just completely outside the dispute, kind of like under Rule 23B. Again, here we have the same issue. If you look at the actual releases of the record itself, they release everything from Title VII complaints to whistleblower complaints to basically everything under the sun. So by usurping the prerogative of the court in this particular instance, again, the defendants in this case have had improper communications with the class. But more importantly, they have represented to the class that they do have the power to settle these claims without the involvement of the court and that these claims are actually settled. Now, this is directly prejudicial to the class because under the FSLA, specifically Section 216B, unlike a Rule 23 class, this has to be an opted class. We actually have to convince punitive class members to opt in and that they actually have a claim. So by stating that they've released the claim, they've chilled the participation of the class. Additionally, then we move on to the declarations, the boilerplate declarations. The court specifically found that these declarations were made without the input of class members and not only stated that they don't have claims against the defendant, but also that others don't have claims against the defendant in an attempt to chill again the class action. Now, evidentiary issues aside, whether there was foundation for these statements or whether these statements were conclusions of law, it's problematic to ask a declarant to issue a declaration without any input in its writing at the same time that you're offering them a large check. Additionally, this raises ethical concerns as well. As was pointed out by the Northern District, when entities such as corporations are dealing with members that aren't directly represented by the entity's counsel, the entity's counsel has to make it known that they might have adverse position to them. And by issuing these declarations, it might be used against them and their coworkers. And this simply wasn't done. Now, the court goes on to state that some of the declarations, I mean some of the disclosures within the settlement documents were simply misleading. And again, there's support in the record for this. We have the documents themselves, so we can determine this from the face of the documents. One of the things cited by Judge Houston below is the fact that these declarations appear one-sided and attempt to paint plaintiff's counsel in a negative light by stating that plaintiff's counsel here is interested in fees, where defendants are interested in paying the individuals. Additionally, there's a reference within the disclosures that state that the individuals through the settlement will get paid for their entire claims and then even extra, suggesting that the settlement amounts were actually complete compensation for all their claims. It simply isn't. Under the FSLA, of course, we have trouble damages, which the settlements didn't take into account for. Additionally, under California labor law, there's several different statutory penalties that can add up very quickly in this case that weren't accounted for in the settlement. Whether you look at the declarations themselves, the settlement agreement that is releasing claims that can't be released, the fact that there was in-person communication, the fact that those in-person communications withheld documents from individuals so they can review them with their counsel, the record is clear and the finding of the facts were clear before Judge Houston below that there was harm to the class. Now, in balancing this against the interests of the defendants, the only interest that the defendants had was a commercial interest in this particular case. And commercial speech is not protected to the same amount as other speech. Matter of fact, there's plenty of laws out there that prevent commercial speech from being false and misleading. All right, counsel. We understand your argument. You've exceeded your time. Thank you. Rebuttal. Well, let's clarify a quick issue that you raised, Judge, and that is that the stay of proceedings is the stay of the proceedings, not of the order. The order has not been stayed. The order has not been stayed. But was your colleague correct in saying nobody has done anything since the appeal was filed? No one is willing to risk the content power of a district court judge, so certainly not in this courtroom. Which gets us to, I think, something I want to make sure. We've already discussed Great Rivers and the thoughtful jurisprudence it provides us, but if this court is looking for a standard to adopt, we'd encourage you to please review the Cabell case that we've cited. It's from the D.C. Circuit in 2006, and it lays out the very issue, I think, of wrestling with Chautaur, which is to qualify as an injunction. What must an order be? And it goes through a four-step process. It's at 322.23. But in summary, it says it has to be directed towards a party, be enforceable by contempt, designed to a court to protect substance of relief, and threaten a serious or perhaps irreparable consequence, and therefore rendering it challengeable only by an immediate appeal. I think that's thoughtful, and I'd ask the court to consider it. Additional grounds, sticking with jurisdiction, we did play this in the alternative, under writ of mandamus. We do believe we meet the standard. We won't re-urge the points and contention of that in the brief. It's been fully briefed. But I do want to flip the slide to, as we talk about the weighing that we're concerned it did not occur, regardless of Apolli's view that our speech is maybe not as worthy of protection as other's speech, is where does the burden lie? This is the weighing that should have occurred below, and that the Ninth Circuit has recognized in Domenico. And that is, can we fix the issues that the Apollis brought to the district court? They don't like the settlement agreements, and they don't like the declarations. The district court is the place to resolve those issues. If you don't like a declaration, how about a little cross-examination? If you're dissatisfied with the contract, trot out the contract offenses. That is the forum. That is the place for resolution. Not here. It's there. And the remedy exists and could have been fully explored in a small twist of irony. The Apollis lost that ability when they sought the relief below. They could no longer gather their evidence to attack the declarations. They could no longer speak to the individuals and find out, did they, in fact, feel they were subject to duress, fraud, or coercion under California state law regarding contracts? That's the remedy. And when we weigh where the burden lies, they have a remedy. We're without one. I think Gulfoil makes a very good point. 23D exists to make sure that we are further, rather than hindering, the purposes of Rule 23. This court has an opportunity in this case to ensure that our 13 district courts and two territorial courts understand that, one, Gulfoil is alive and well. We met it in Domingo. Two, we, this court, can harmonize Shandara v. Pickup Sticks, that expressly in the state of California, allows us to pursue precisely these types of settlements and in Pickup Sticks that granted summary judgment on these very agreements. So we have a specific procedure in California adopted by our courts of appeal that says you want to go get settlements, we think that's efficient, a little less time in the courtroom. This circuit can tell all of the litigants and Wage and Hour is very active, this is the way forward. Gulfoil is alive and well. Pickup Sticks is alive and well. And if you want to fight those issues out, we'll even consider them on summary judgment. There's no reason our federal courts enforcing these same laws should act any differently. We've asked you to vacate with instructions to conduct appropriate proceedings below. Thank you. Thank you, counsel.  The case, as argued, is submitted for decision by the court.
judges: Rawlinson, Hurwitz, Melloy